BELÉN RAMÓN DE GONZÁLEZ ET AL., Plaintiffs and Appellees, v. CRISTÓBAL PUIG ET AL., Defendants and Appellants.

No. 4671.  Argued March 13, 1929.—Decided April 4, 1929.

Monserrat & Monserrat for the appellants.  Angel R. de Jesús for the appellees.

Mr. Justice Texidor delivered the opinion of the court.

The plaintiffs are the owners of property No. 35 San Sebastián street, San Juan, Porto Rico, the ground floor of which has been used for a long time as a bakery.  By a contract set out in a public instrument of May 18, 1925, the appellees leased to appellants Cristóbal Puig and Martín Ortega the ground floor, oven and bakery with the machinery and utensils for making bread for a term to expire on April 5, 1927, at the rent of $125 monthly.  At the termination of the contract the appellants delivered to the appellees the leased part of the property and the appellees protested that Puig and Ortega had not complied with the terms of the contract and were not delivering to them the house and oven in fit conditions for use as a bakery because they needed repairs and works indispensable for that purpose which would cost $1,128.61.  As they could not arrive at an agreement with the lessees, they brought suit against them in the District Court of San Juan, alleging in their complaint the necessary facts and besides that they were prevented from making bread in their house and suffered damages amounting to $500.  They prayed the court for judgment against the defendants for $1,628.61.

The defendants answered admitting the existence of the lease contract and of the clauses thereof transcribed in the complaint and denying that during the life of the contract they ceased making bread in the leased house and oven.  They denied that at the expiration of the contract they did not leave the property in a fit condition for making bread, and alleged that they had made on the property the repairs

exacted by the contract by cleaning and painting it and arranging it in accordance with the requirements of the Health Department. They denied that the said department had refused to grant to the plaintiffs the license for making bread referred to in the complaint and the answer because the property did not comply with the sanitary regulations, and alleged that before the expiration of the contract the defendants had an inspection made of the property by the health authorities who issued to them a new license for making bread after some repairs had been made; that during the running of the contract the leased property had undergone no alteration, and that at present it is licensed to make bread, and that they have delivered the property to the plaintiffs in fit conditions for continuing to make bread. They denied the cost of the repairs and the damages and prayed for a dismissal of the complaint.

The case went to trial and the court rendered a judgment based on its opinion in which the facts are studied carefully, minutely and thoroughly and the questions of law are treated with great discretion.

We shall transcribe from the opinion of the court the following paragraphs because they are very important:

"Both parties offered oral and documentary evidence which was admitted. As a result of the admissions made and the evidence heard, the court finds that the following facts have been proved satisfactorily:

"1. That the plaintiffs and the defendants are all of age and residents of this city.

"2. That the plaintiffs are the owners of house No. 35 San Sebastian street of this city and on May 18, 1925, by public deed No. 178 before notary Julio Cesar González the plaintiffs leased to the defendants the ground floor of the said house used as a bakery with an oven for making bread and other machinery and utensils for a term of two years which expired on April 5, 1927, at a rent of $125 monthly.

"3. That the said lease contained, among others, the following conditions:

" 'Third. The lessees shall dedicate from this date the leased

property, or ground floor, to the industry of making bread, *and shall return it in fit conditions for continuing that industry.*

" 'Fifth. With the exception of painting the front of the building which shall be done by the lessors, all the interior repairs in the plumbing, masonry, painting of any kind that may be ordered by the health authorities on the leased property shall be paid by the lessees as well as any tax that may be levied on the bakery, and the expenses of water and light bills and the execution of the deed and its copy.

" 'Sixth. The obligation which the lessees impose by this contract shall be solidary.

" 'Seventh. The non-performance of any of the stipulated conditions shall give place to the termination of this contract and the injured party may take judicial action.'

"Before proceeding further with the statement of the facts proved it is well to say that the clause of the lease contract which the plaintiffs allege that the defendants had failed to comply with reads as follows:

" 'Third. The lessees shall dedicate from this date the leased property, or ground floor, to the industry of making bread, and shall return it in fit conditions for continuing that industry.'

"In short, the plaintiffs allege that at the termination of the contract the defendants failed to deliver it in fit conditions for making bread. On the contrary, the defendants allege that at the termination of the contract they delivered the property in conditions for continuing the bakery in operation."

The judgment dated March 30, 1928, orders the defendants to pay to the plaintiffs the sum of $1,378 and the costs.

That judgment has been appealed from and two errors are assigned, the first reading as follows:

"First. The district court erred in holding that the defendants had not complied with the lease contract in this case, in sustaining the complaint and in adjudging that the appellants pay the sum of $1,378 as damages alleged to have been suffered by the appellees."

We do not agree with the appellants. The third clause of the lease contract is clear and categorical. It is drafted in terms that leave no room for doubt. The leased property should be delivered in conditions for continuing the industry of making bread. And as said by the district court in its able

opinion, "it is to be presumed that in binding themselves to deliver the property in conditions for continuing its making the contracting parties could not have been thinking of the act of making bread, but necessarily had to think of the making of bread in *a lawful manner,* that is, in accordance with the legal requisites and the sanitary regulations."

There are also facts which necessarily must attract the attention of the judge; not his prepared or prejudiced attention, but his watchful and vigilant attention. The defendants were bound to deliver the property to the plaintiffs on April 5, 1927, and on March 25, 1927, eleven days before the delivery, they secured from the Health Department a new license to make bread in the same place. What for? They were not going to continue making bread in that place; therefore the petition for the license (which can not be transferred without the department's authorization) was either an absurdity or had some other purpose. On page 31 of the transcript of the record the district court informs us of the purpose for which the license was sought:

". . . and they secured from the Health Department a license for making bread in said place with the sole purpose of being able to comply with the letter of the contract which required that they deliver the property in conditions for continuing the making of bread . . . ."

The plaintiffs also applied for a license for making bread in the same place. They had a logical justification in applying for it, since they would receive the property on April 5, 1927. The Health Department refused to grant them the license because the place was not in a good condition and was in need of repairs to the oven, lacked elements for the cleanliness of persons and utensils, bad condition of the walls, etc. The evidence in this connection was categorical.

No matter how this matter may be argued and even if the place had been in good conditions on March 29, it appears that on April 4, 1927, it was not in good conditions for the making of bread. The same authority which the appellants

invoke for having issued to them an unnecessary license is that invoked by the appellees for having refused them the license sought subsequently to the granting of the former because the property did not meet the required condition. From an examination of the refusal of the department and the deficiencies specified we are compelled to conclude that the elimination or remedying of such deficiencies is an obligation imposed on the lessees in the fifth clause of the lease contract.

The lessees failed to comply with the stipulations of the third and fifth clauses of their contract and this justifies the judgment.

The second assignment of error refers to the imposition of costs. We understand that in a case of this kind in which the lessees have obstinately and unjustifiably denied the rights of the plaintiffs the imposition of the costs on them is just.

The judgment appealed from must be affirmed.